## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

### CONCISE SUMMARY OF THE CASE

Pursuant to 3rd Cir. LAR 33.3, counsel are required to file a concise summary of the case within **14** days of the date of docketing of the Notice of Appeal. Total statement is limited to no more than 2 pages, single-spaced. Counsel may utilize this form or attach a 2 page statement encompassing the information required by this form.

SHORT CAPTION: In re Google Inc. Cookie Placement Consumer Privacy Litigation

USCA NO.: 17-1480

LOWER COURT or AGENCY and DOCKET NUMBER:
District of Delaware, No. 12-md-2358

NAME OF JUDGE: Robinson

Specify who is suing whom, for what, and the subject of this action. Identify (1) the nature of the action; (2) the parties to this appeal; (3) the amount in controversy or other relief involved; and (4) the judgment or other action in the lower court or agency from which this action is taken:

This case involves a putative class of Apple Safari and Microsoft Internet Explorer web browser users who visited certain websites during the class period, from which Doubleclick.net cookies were placed on their devices, by means that allegedly circumvented users' privacy settings. After several similar cases were consolidated in the District of Delaware by the JPML, and after four years of litigation, the parties agreed to certify a class for settlement purposes only and to settle that class's claims. The settlement proposed to provide class members no relief, rather it would divide the $5.5 million settlement fund between class counsel, the named representatives and six charitable cy pres recipients. Many of the cy pres recipients had preexisting relationships with the defendant and for one of which lead class counsel serves as chairman of the board. Absent class member Theodore H. Frank objected to the class certification, the proposed settlement and class counsel's requested fee award. Notwithstanding the objection, the district court approved the certification and settlement, though it awarded only roughly $2 million in fees rather than the $2.5 million requested. Frank now appeals.

LIST and **ATTACH** a copy of each order, judgment, decision or opinion which is involved in this appeal. If the order(s) or opinion(s) being appealed adopt, affirm, or otherwise refer to the report and recommendation of a magistrate judge or the decision of a bankruptcy judge, the report and recommendation or decision shall also be attached.

See attached order

Provide a short statement of the factual and procedural background, which you consider important to this appeal:

In 2012, the Judicial Panel on Multidistrict Litigation transferred eight actions against Google to the District of Delaware for consolidated pretrial proceedings under 28 U.S.C. sec. 1407. In 2013, the district court granted defendant's motion to dismiss plaintiffs' claims. The plaintiffs appealed and in 2015, this court affirmed in large part, though reversed as to the dismissal of CA state constitutional privacy claims. 806 F.3d 125 (3d Cir. 2015). On remand shortly thereafter, the parties settled and agreed to a settlement-only class certification. Before the objection deadline in December 2016, absent class member Theodore H. Frank submitted a timely objection. He appeared, through counsel at the fairness hearing in January 2017. In February 2017, the district court issued a final order approving the settlement, the class certification and the fee award in part. In March 2017, Frank filed a timely notice of appeal.

Identify the issues to be raised on appeal:

See attached

This is to certify that this Concise Summary of the Case was electronically filed with the Clerk of the U.S. Court of Appeals for the Third Circuit and a copy hereof served to each party or their counsel of record

this __20__ day of __March__,20__17__.

/s/ Adam E. Schulman
_____
Signature of Counsel

Rev. 07/2015

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN RE: GOOGLE INC. COOKIE )
PLACEMENT CONSUMER PRIVACY ) Civ. No. 12-MD-2358 (SLR)
LITIGATION )

### MEMORANDUM AND ORDER

At Wilmington this 2nd day of February, 2017, having reviewed the papers filed

in connection with Class Plaintiffs' motion for final approval of settlement with Google

Inc. ("Google"), and having conducted a hearing on the same, at which time the sole

objecting party was represented and heard;

NOW, THEREFORE, IT IS ORDERED that the motion for approval (D.I. 167) is

granted and the objection of Theodore H. Frank (D.I. 171) is overruled, for the reasons

that follow:

1. **Background.** In 2012, numerous individuals (including the plaintiffs at bar[1])

filed complaints in various federal courts around the country after it became known that

Google had circumvented certain privacy settings on Apple Safari and Microsoft

Internet Explorer web browsers. In June 2012, these actions were centralized and

transferred to this court for coordinated or consolidated pretrial proceedings pursuant

28 U.S.C. § 1407. (D.I. 1)

2. Thereafter, plaintiffs filed a consolidated class action complaint against

Google and other defendants, alleging (on behalf of a nationwide class of consumers)

_____

[1]Jose M. Bermudez, Nicholas Todd Heinrich, and Lynne Krause (collectively, the
"Class Representatives").

that Google intentionally set cookies[2] on plaintiffs' Safari and Internet Explorer web browsers in conflict with the default cookie-blocking settings of such browsers and in violation of various federal and state laws. (D.I. 46) Rather than answer, Google filed a motion to dismiss all claims against it. (D.I. 56) The court granted the motion in its entirety (D.I. 122), which decision was affirmed in part (as to the federal claims asserted by plaintiffs) and vacated in part (as to certain state law claims) on appeal.[3] (D.I. 146)

3. On remand, the parties initiated the pursuit of discovery. (D.I. 155-156, 158-160) Thereafter, the parties engaged in private mediation efforts, which efforts were successful. The agreed-upon Settlement provides for a payment from Google of \$5.5 million, to be used for *cy pres* contributions that will indirectly benefit plaintiffs. The Settlement also provides for remedial and prospective relief, including Google's assurances that it took actions to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party Google cookies that exist in the browser filed for Safari browsers. (D.I. 163-1, ex. A at § 5.1) Plaintiffs subsequently filed a motion for preliminary approval of settlement. (D.I. 163) The motion was granted on August 31, 2016, with the court directing that notice be disseminated to the Settlement Class in accordance with the Settlement Agreement. (D.I. 164) The postmark deadline for all exclusions from the Settlement was November 27, 2016, and the postmark deadline to

---

[2]A "cookie" is "information that a Web site puts on your hard disk so that it can remember something about you at a later time." Http://searchsoftwareequality.techtarget.com/definition/cookie.

[3]Plaintiffs' petition for writ of certiorari with the United States Supreme Court was denied on October 3, 2016.

all objections to the Settlement was December 21, 2016. There were 50 timely

requests for exclusion; as noted, one objection was filed. (D.I. 167-1 at 8-9; D.I. 171)

4. **Settlement Class.** Plaintiffs seek first to certify the Settlement Class for

settlement purposes only, and have defined the Settlement Class as:[4]

[A]ll persons in the United States of America who used Apple Safari or
Microsoft Internet Explorer web browsers and who visited a website
from which Doubleclick.net (Google's advertising serving service) cookies
were placed by the means alleged in the Complaint.

(D.I. 163-1, ex. A at § 2.3) In order to certify the Settlement Class, the court must

conclude that the requirements for class certification under Federal Rule of Civil

Procedure 23(a) and at least one of the separate provisions of Rule 23(b) are met. *See*

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-614 (1997). There have been no

objections filed in this regard, and the record provides sufficient support for certification.

As noted, the members of the Settlement Class are so numerous and geographically

diverse that joinder is impracticable. Because Google served the same code in the

same manner in order to circumvent users' Safari and/or Internet Explorer web

browsers' security and privacy settings to the Class representatives and all class

members, there are common questions of law and fact and injunctive relief is an

appropriate remedy. Furthermore, the claims of the Class Representatives are typical

of the claims of the Settlement Class and the Class Representatives will fairly and

_____

[4]Excluded from the Settlement Class are: "(i) Google, its parent, subsidiaries,
successors, affiliates, officers, and directors; (ii) the judge(s) to whom the Civil Actions
are assigned and any member of the judge's or judges' immediate family; (iii) Persons
who have settled with and released Google from individual claims substantially similar
to those alleged in the Litigation; and (iv) Persons who submit a valid and tiemly
Request for Exclusion." (D.I. 163-1, ex. A at § 2.5)

3

adequately protect the interests of the Settlement Class. For these reasons, the Settlement Class is certified.

5. **Settlement and Notice Program.** The proposed settlement with Google was reached following extensive arm's-length negotiations between Class Counsel and Google's counsel, starting with informal discussions between the parties and culminating in private mediation efforts before a former federal judge. The amount of the award to be paid to the Settlement Class is $5.5 million, to be used for *cy pres* contributions and the indirect benefit of the Settlement Class.[5] Consistent with the Settlement Agreement,[6] the parties have proposed six *cy pres* recipients: (1) Berkeley Center for Law & Technology ("BCLT"); (2) Berkman Center for Internet & Society at Harvard University ("BCIS"); (3) Center for Democracy & Technology (Privacy & Data Project) ("CDT"); (4) Public Counsel; (5) Privacy Rights Clearinghouse; and (6) Center for Internet & Society at Stanford University ("CIS"). (D.I. 166) The amount of the settlement fund is related to the estimated monetary amount Google obtained from its actions under review was about $4 million, and Google had already disgorged unjust enrichment by paying more millions of dollars in fines to the government in settling a Federal Trade Commission investigation into its actions, Class Counsel concluded that $5.5 million was reasonable and fair compensation.[7] (D.I. 167-1 at 6) In addition to a

---

[5] *See* D.I. 163-1, ex. A at § 5.2.

[6] *See* D.I. 163-1, ex. A at § 5.3.

[7] In this regard, the Settlement provides that plaintiffs "may apply to the Court seeking a reasonable proportion of the Settlement Fund as payment of any reasonable attorneys' fees and costs (the Fee Award) and any Incentive Award in recognition of the Class Representatives' efforts on behalf of the Class as appropriate compensation for

4

cash award, the Settlement also provides for remedial and prospective relief for the Settlement Class, including Google's assurances that it has taken actions to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party Google cookies that exist in the browser files for Safari browsers. (D.I. 163-1, ex. A at § 5.1)

6. The court preliminarily approved the Settlement on August 31, 2016. (D.I. 164) Beginning on September 12, 2016, and continuing until October 24, 2016, notice of the proposed settlement with Google ("Notice") was disseminated to potential members of the class via online advertisements on the Audience Network Buy and Pulpo Media networks, as well as through targeted social media advertising on Facebook, designed by the Class Administrator to reach the broadest possible audience of potential Apple Safari and Microsoft Internet Explorer web browsers. (D.I. 167-5, ¶¶ 6-9 and ex. C) A summary Notice was also published in the October 17, 2016 issue of *People Magazine.* (*Id.* at ¶ 10 and ex. D) A website containing the long-form Notice was also established and, as of November 28, 2016, was visited at least 41,705 times. (*Id* at ¶ 11 and ex. E) The postmark deadline for all exclusions from the Settlement was November 27, 2016, and the postmark deadline for all objections to the Settlement was December 21, 2016. The Class Administrator received 50 timely requests for exclusion from the Settlement. (*Id.* at ¶ 12 and ex. G) A single objection was filed.

---

their time and effort expended in serving the Class." (D.I. 163-1, ex. A at § 11.1) Moreover, "Google will not contest a total amount of Fee Award and Incentive Awards (not to exceed $1,000 per Class Representative) up to $2,500,000.00. (*Id.* at § 11.2)

5

7. **Standard of Review.** The court recognizes that the "law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). Class settlements are presumed fair "if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002). Nevertheless, in order to ensure that the settlement under review is "fair, adequate and reasonable," the Third Circuit has identified the following issues as appropriate for judicial scrutiny: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Settlement Class to the Settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *See Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975).

8. Again, the thrust of the sole objection is not directed to the *Girsh* factors, and the record adequately establishes that the applicable *Girsh* factors have been satisfied. The instant litigation clearly was complex, had already been litigated through a motion

6

to dismiss and appeal, and was poised to move forward through further discovery, motion practice and trial to resolve the remaining state action.[8]  As noted, the record reflects a single, limited objection.[9]  The nature of the claims - invasion of privacy - pose difficulties in terms of establishing liability (as demonstrated by Google's successful motion to dismiss) and damages, as well as in maintaining the class action through trial.[10]  Although Google most likely has the ability to withstand a greater judgment, this factor does not weigh against approving the proposed settlement "in light of the risks that Plaintiffs would not be able to achieve any greater recovery at trial."[11]  *Lazy Oil Co. v. Witco Corp.,* 95 F. Supp.2d 290, 318 (W.D. Pa. 1997).  Finally, there has been no objection filed as to the adequacy of the notice provided to the Settlement Class; therefore, the court finds that the Notice Plan previously approved passes muster under Rule 23(c).

9.  In addition to the *Girsh* factors, which must be considered before approving a class settlement, the Third Circuit in *In re Prudential Ins. Co. Am. Sales Practice Litig.,* 148 F.3d 283 (3d Cir. 1998), expanded the analysis by directing district courts to consider, when appropriate, such additional factors as:  (1) "the maturity of the underlying substantive issues;" (2) "the development of scientific knowledge;" (3) any circumstances that "bear on the ability to assess the probable outcome of a trial on the

---

[8]Thus satisfying *Girsh* factors (1) and (3).

[9]*Girsh* factor (2).

[10]*Girsh* factors (4), (5), and (6).

[11]*Girsh* factor (7), (8), and (9).

7

merits of liability and individual damages;" (4) whether class members were "accorded the right to opt out of the settlement;" (5) "whether any provisions for attorneys' fees are reasonable;" and (6) whether the ADR procedure was fair and reasonable. *Id.* at 323. The Third Circuit in *In re Baby Prod. Antitrust Litig.* added an additional inquiry, that is, a "thorough" and "practical" analysis of settlement terms vis a vis "the degree of direct benefit provided to the class" versus any *cy pres* awards. 708 F.3d 163, 174 (3d Cir. 2013).

10. **Objection.** The sole objection filed in this matter was done so by Theodore H. Frank, an individual who has participated in multiple litigations as an objector.[12] The thrust of his objection is that the Settlement should be modified or rejected because, rather than providing for direct compensation to the Settlement Class, it provides for indirect compensation via payments to certain *cy pres* charities. A *cy pres* remedy "is a settlement structure wherein class members receive an indirect benefit (usually through defendant donations to a third party) rather than a direct monetary payment." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). Although "direct distributions to the class are preferred over *cy pres* distributions," *In re Baby Prod. Antitrust Litig.*, 708 F.3d at 173, the *cy pres* remedy has been held to be appropriate when there is unclaimed or non-distributable portions of a class action settlement fund. "For purposes of the *cy pres* doctrine, a class-action settlement fund is 'non-distributable' when 'the proof of individual claims would be burdensome or distribution of damages costly.'" *Lane*, 696 F.3d at 819 (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)). *See*

_____

[12](*See, e.g.,* D.I. 172 at 10-11)

8

*also In re Baby Products Antitrust Litig.*, 708 F.3d at 173. Because the *cy pres* remedy provides only an indirect benefit to the settlement class, to be approved it must "account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members. . . . " *Nachshin*, 663 F.3d at 1036.

11. The court concludes that the *cy pres* awards at issue pass muster under the prevailing case law. Having overseen this litigation from the time it was instituted, the nature of the likely compensation to class members has always been complicated by the substantial problems of identifying the millions of potential class members and then of translating their alleged loss of privacy into individual cash amounts. The court concludes that the realities of the litigation at bar demonstrate that direct monetary payments to absent class members would be logistically burdensome, impractical, and economically infeasible, resulting (at best) with direct compensation of a *de minimus* amount. The facts of record, then, are clearly distinguishable from those addressed in *In re Baby Products Antitrust Litigation,* where the district court had approved a *cy pres* award without first confirming the amount of direct compensation. The Third Circuit remanded for the court to reconsider the fairness of the settlement.

12. With respect to whether the proposed *cy pres* distributions bear a direct and substantial nexus to the interests of absent class members, the record demonstrates that the proposed *cy pres* distributions are appropriately tailored and focused. More specifically, this case is about Google's alleged circumvention of Internet browser privacy settings. Each proposed *cy pres* recipient must agree to "devote the funds to promote public awareness and education, and/or support research, development, and

9

initiatives, related to the security and/or privacy of Internet browsers." (D.I. 163-1, ex. A at § 5.3.2) If any proposed *cy pres* recipient does not agree to that condition, "then its portion will be distributed pro rata to the other identified recipients." (*Id.*) The description of record - that the proposed *cy pres* recipients are among the preeminent institutions for researching and advocating for online privacy - is not contradicted. Again, the facts of record are distinguishable from those discussed in cases such as *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012) (the Court finding that "appropriate *cy pres* recipients are not charities that feed the needy, but organizations dedicated to protecting consumers from, or redressing injuries caused by, false advertising."). Likewise, the court finds no conflict of interest that would undermine the selected *cy pres* recipients.[13] *See, e.g., Lane*, 696 F.3d at 821 ("As the 'offspring of compromise,' . . ., settlement agreements will necessarily reflect the interests of both parties to the settlement," including the presence of a party employee on the Board of the entity distributing *cy pres* funds.); *In re Google Referrer Header Privacy Litig.*, 87 F. Supp.3d 1122, 1137-38 (N.D. Cal. 2015); *Miller v. Ghiradelli Chocolate Co.*, 2015 WL 758094, at \*11 (N.D. Cal. 2015). In sum, the court finds that proposed *cy pres* contributions to the proposed recipients an effective and beneficial remedy that bears a substantial nexus to the interests of the Settlement Class.

     12. **Conclusion.** For the reasons stated, the court concludes that the

---

[13]The objector takes the position that any relationship between a party (and its counsel) and a proposed *cy pres* recipient automatically disqualifies the proposed *cy pres* recipient. In this case, one member of plaintiffs' Executive Committee serves *pro bono* on the Board of Directors of Public Counsel (one of the six proposed *cy pres* recipients and one of the Nation's largest *pro bono* law firms), and Google has previously donated money to BCIS, CIS, BCLT, and CDT.

10

Settlement is fair, reasonable, and adequate when considered from the perspective of the Settlement Class as a whole. Therefore, plaintiffs' motion for final approval of the Settlement (D.I. 167) is granted, and the objection of Theodore H. Frank to the Settlement (D.I. 171) is overruled.

13. **Attorney Fees and Incentive Awards.** Consistent with the Settlement, Incentive Awards of up to $1000 may be distributed to each Class Representative. There has been no objection filed as to this aspect of the Settlement and, therefore, the court approves plaintiffs' motion for approval of such. (D.I. 168) With respect to the award of attorney fees, plaintiffs represent that Class Counsel and other plaintiffs' law firms have devoted more than 4,843 hours to this case, reporting a lodestar of approximately $3,296,169.75 at their regular hourly rates and $90,929.26 in out-of-pocket expenses. There has been no objection to the payment of expenses and, therefore, plaintiffs' motion is approved in this regard. Plaintiffs' request for $2,406,070.74 in attorney fees, representing 43.7% of the gross Settlement Fund, deserves a closer look, as urged by the objection of Mr. Frank. The court recognizes that the requested amount fits within the mathematical range of reasonableness under the percentage-of-recovery method, as confirmed by the lodestar cross-check. Nevertheless, in the absence of a direct benefit to the Settlement Class, it is even more important to the interests of justice that the amount of attorney fees awarded be commensurately fashioned. In other words, the court concludes that it is appropriate to adjust attorney fees to reflect the fact that it is only the attorneys who have directly benefitted from the Settlement. In this case, given that the Settlement Fund is relatively modest and the resolution at bar follows that of the FTC investigation, attorney fees

11

approaching 50% of the Settlement Fund is not acceptable. Therefore, the court will award attorney fees in the amount of $1,925,000.00, or 35% of the Settlement Fund.

Therefore, for the reasons stated, IT IS FURTHER ORDERED that plaintiffs' motion for approval of attorney fees, expenses and incentive awards (D.I. 168) is granted to the following extent: expenses in the amount of $90,929.26, incentive awards of $1000.00 for each Class Representative, and attorney fees in the amount of $1,925,000.00.

United States District Judge

NO. 17-1480

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

In re Google Inc. Cookie Placement Consumer Privacy Litigation,

Theodore H. Frank,
*Appellant.*

On Appeal from the United States District Court
for the District of Delaware, No. 12-md-2358

Statement of the Issues

COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
Adam E. Schulman
1310 L Street, NW, 7th Floor
Washington, D.C. 20005
(610) 457-0856

*Attorneys for Appellant Theodore H. Frank*

Appellant Frank intends to present the following issues on appeal:

1.  The Fifth, Seventh, and Eighth Circuits hold that a *cy pres* distribution is "supposed to be limited to money that can't feasibly be awarded" to the class. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 784 (7th Cir. 2014) (rejecting $1.1 million *cy pres* residual in class with over 10 million members); *Klier v. Elf Atochem N.A., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011); *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1063-66 (8th Cir. 2015); *accord* AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.07(a) (2010) ("*ALI Principles*"). This Court requires district courts to ensure that a settlement provides "sufficient direct benefit" so that class members remain the "foremost beneficiaries" of the class action. *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 170, 176, 179, 181 (3d Cir. 2013). Did the district court err when it approved a class action settlement that consisted solely of *cy pres* distribution of millions of dollars when Frank presented undisputed evidence that similar settlements have successfully distributed similar sums to similarly-sized classes through a claims process?

2.  In the alternative, courts have held that actions that will not confer a meaningful benefit upon absent class members cannot satisfy the Rule 23(a)(4) requirement of adequacy of representation. *E.g.*, *Gallego v. Northland Group*, 814 F.3d 123, 129-30 (2d Cir. 2016); *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013). If it is true that any distribution to the class was not feasible, did the district court err as a matter of law in certifying the class?

3.  "A *cy pres* remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the award was made on the merits." *ALI Principles* § 3.07 *comment (b)*. *Accord Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011) (criticizing *cy pres* where "the selection process may answer to the whims and self interests of the parties [or] their counsel")(internal citation omitted); *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (disapproving *cy pres* where a defendant might be using "previously budgeted funds" to make the sort of donations it has long made). Did the district court err as a matter of law when it failed to apply § 3.07 and approved a *cy pres* distribution that paid money to a charity for which lead class counsel serves as chairman of the board and at least four organizations with previously budgeted donations from Google?

4.  This court and the Seventh Circuits hold that for attorneys' fees should be reduced when class counsel prioritizes *cy pres* over direct class recovery. *Baby Prods.*, 708 F.3d at 178; *Pearson*, 772 F.3d at 781. Did the district court err by treating a $5.5 million *cy pres*-only settlement as worth $5.5 million for the purposes of awarding attorneys' fees to class counsel? Did the district court abuse its discretion by awarding an above-benchmark 35% fee?

Dated:  March 20, 2017          Respectfully submitted,

*/s/  Adam E. Schulman*
COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1310 L Street, NW, 7th Floor
Washington, DC 20005
Telephone:  (610) 457-0856
Email:  adam.schulman@cei.org
*Attorneys for Appellant Theodore H. Frank*