**17-1480**

IN THE

# United States Court of Appeals

## FOR THE THIRD CIRCUIT

In Re: Google Inc. Cookie Placement
Consumer Privacy Litigation

Theodore H. Frank,

*Objector-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## ANSWERING BRIEF FOR DEFENDANT-APPELLEE GOOGLE INC.

Michael H. Rubin
Wilson Sonsini Goodrich & Rosati
Professional Corporation
One Market Street
Spear Tower, Suite 3300
San Francisco, California 94105
(415) 947-2000

Anthony J Weibell
Wilson Sonsini Goodrich & Rosati
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
(650) 493-9300

*Counsel for Defendant-Appellee
   Google Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Google Inc. certifies that it is a wholly-owned subsidiary of Alphabet Inc.


Dated: July 28, 2017                    /s/ Michael H. Rubin

# TABLE OF CONTENTS

PAGE

INTRODUCTION ............................................................................. 1

COUNTERSTATEMENT OF THE ISSUES ................................... 3

COUNTERSTATEMENT OF RELATED CASES ........................... 4

COUNTERSTATEMENT OF THE CASE ....................................... 4

COUNTERSTATEMENT OF THE STANDARD OF REVIEW ....... 8

SUMMARY OF THE ARGUMENT ................................................. 9

ARGUMENT .................................................................................. 12

    I.   THE DISTRICT COURT DID NOT ABUSE ITS
        DISCRETION IN APPROVING A SETTLEMENT
        LIMITED TO *CY PRES* AND INJUNCTIVE RELIEF ....... 12

        A.  Direct Monetary Payments to Class Members Are
            Not Required Because the Class Would Not
            Likely Have Recovered Damages in the Lawsuit ........ 12

        B.  The *Cy Pres* Payments in this Case Are Part of
            the Injunctive Relief to Protect the Class—Not a
            Substitute for Monetary Compensation to Class
            Members ................................................................... 16

        C.  Identifying and Distributing Funds to Class
            Members is Impractical if Not Impossible ................... 17

        D.  Objector Frank's Proposal for a Claims-Made
            Settlement Distribution is Not Practical or
            Beneficial to the Class ............................................... 21

   II.  THE SETTLEMENT CLASS WAS PROPERLY
        CERTIFIED EVEN IF A LITIGATION CLASS
        COULD NOT HAVE BEEN CERTIFIED ........................... 24

III. THE DISTRICT COURT DID NOT ABUSE ITS
DISCRETION IN APPROVING THE *CY PRES*
RECIPIENTS ................................................................. 28

   A.  The *Cy Pres* Benefit is Not Collusive ........................... 28

   B.  The *Cy Pres* Benefit is Not Illusory ............................. 30

IV. THE AMOUNT OF THE CLASS COUNSEL FEE
AWARD IS SEVERABLE FROM THE FAIRNESS
OF THE SETTLEMENT ................................................. 32

CONCLUSION ........................................................................ 34

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................... 26

*In re Baby Products Antitrust Litig.,*
  708 F.3d 163 (3d Cir. 2013) ...........................................*passim*

*Bell Atl. Corp. v. Bolger,*
  2 F.3d 1304 (3d Cir. 1993) .........................................12, 13, 14

*Carandang v. Google Inc.,*
  No. CGC-12-518415 (Cal. Super. Ct. S.F. Cty.)........................ 4

*Carrera v. Bayer Corp.,*
  727 F.3d 300 (3d Cir. 2013), *reh'g en banc denied,*
  2014 WL 3887938 (3d Cir. May 2, 2014) ......................24, 25, 26

*Castro v. NYT Television,*
  895 A.2d 1173 (N.J. Super. Ct. App. Div. 2006)..................... 25

*In re Comcast Corp. Set-Top Cable Television Box*
  *Antitrust Litig.,*
  656 F. App'x 8 (3d Cir. 2016) .................................................. 26

*Fraley v. Facebook, Inc.*
  966 F. Supp. 2d 939 (N.D. Cal. 2013), *aff'd sub nom.*
  *Fraley v. Batman,*
  638 F. App'x 594 (9th Cir. 2016).................................... 22, 23

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................. 15

*In re Google Inc. Cookie Placement Consumer Privacy*
  *Litig.* (*Cookie I*),
  988 F. Supp. 2d 434 (D. Del. 2013) .................................... 5, 21

*In re Google Inc. Cookie Placement Consumer Privacy*
  *Litig.* (*Cookie II*),
  806 F.3d 125 (3d Cir. 2015) ...........................................*passim*

PAGE(S)

*In re Google Inc. Gmail Litig.*,
   2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........................... 24

*In re Google Referrer Header Privacy Litig.*,
   87 F. Supp. 3d 1122 (N.D. Cal. 2015), *appeal pending*,
   No. 15-15858 (9th Cir. Apr. 28, 2015) ............................... 28, 29

*Halley v. Honeywell Int'l, Inc.*,
   – F.3d –, 2017 WL 2802638 (3d Cir. June 29, 2017) .............. 21

*Hernandez v. Hillsides, Inc.*,
   211 P.3d 1063 (Cal. 2009) ........................................................ 7

*Kirsch v. Delta Dental of N.J.*,
   534 F. App'x 113 (3d Cir. 2013) ............................................. 13

*Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*,
   26 F.3d 375 (3d Cir. 1994) ....................................................... 9

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012), *reh'g en banc denied*,
   709 F.3d 791 (9th Cir. 2013) ............................................. 13, 29

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) .................................................. 13

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) ................................................... 25

*McDonough v. Horizon Blue Cross Blue Shield of N.J.*,
   641 F. App'x 146 (3d Cir. 2015) ........................................ 12, 13

*Murray v. Fin. Visions, Inc.*,
   2008 WL 4850328 (D. Ariz. Nov. 7, 2008) .............................. 25

*Nachshin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) ................................................ 29

*Peterson v. Aaron's, Inc.*,
   2017 WL 364094 (N.D. Ga. Jan. 25, 2017) ............................. 25

*In re Prudential Ins. Co. Am. Sales Practice Litig.*
   *Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ................................................... 34

PAGE(S)

*Sullivan v. DB Invs., Inc.,*
   667 F.3d 273 (3d Cir. 2011) ............................................*passim*

*United States v. Joseph,*
   730 F.3d 336 (3d Cir. 2013) ..................................................... 9

*Vasco v. Power Home Remodeling Grp. LLC,*
   2016 WL 5930876 (E.D. Pa. Oct. 12, 2016) ............................ 29

*Zimmerman v. Bell,*
   800 F.2d 386 (4th Cir. 1986).................................................. 13

## Statutes, Rules and Regulations

Fed. R. Civ. P. 12(b)(6)........................................................ 1

Fed. R. Civ. P. 23(b)(2)............................................16, 27, 28

Fed. R. Civ. P. 23(b)(3) ...............................................1, 24, 25, 27

# INTRODUCTION

Defendant-Appellee Google Inc. ("Google") submits this separate answering brief to supplement the answering brief of Plaintiffs-Appellees.

This case is again before the Court following the Court's prior decision affirming dismissal of nearly all of Plaintiffs' claims from this action under Fed. R. Civ. P. 12(b)(6). *See In re Google Inc. Cookie Placement Consumer Privacy Litig.* (*Cookie II*), 806 F.3d 125 (3d Cir. 2015). That decision affirmed dismissal of all claims eligible for statutory damages. *Id.* The only claims remaining after remand were two essentially identical state law claims alleging common law and California constitutional law invasion of privacy. *Id.*

After that decision by the Court, the parties reevaluated their respective prospects for prevailing on what claims were left in the case and the risks of continuing forward with the litigation. As for Google, it remained convinced that the remaining claims could not be supported by the evidence and could not be certified for a class seeking monetary relief under Fed. R. Civ. P. 23(b)(3). The District Court shared this assessment, at least in part. *See* JA291 ("[H]aving overseen this

litigation from the time it was instituted, I believe this has always been a case in which the facts preclude direct individual compensation."). Plaintiffs and their counsel conducted their own risk/benefit assessment. The parties then decided to meet at the mediator's table to find a resolution that was fair to all parties in light of their respective prospects for success.

The result of that extensive effort was the settlement now on appeal—a settlement that guaranteed for the class complete remediation of the problem alleged in the Complaint and that offered substantial monetary contributions to organizations who agreed to use these funds to help the class avoid similar privacy issues in the future. Out of the millions of potential class members who received notice of the settlement, Appellant Ted Frank ("Objector Frank") is the only person who objected to the settlement.

The District Court thoroughly examined Objector Frank's arguments in approving the settlement and in making a reduced fee award to class counsel. As explained below and in the answering brief of Plaintiffs, because the District Court did not abuse its discretion in

making these determinations, the order approving the settlement should be affirmed.

## COUNTERSTATEMENT OF THE ISSUES

Objector Frank raises three questions in his opening brief on appeal (Op. Br. at 1-3). The answer to each question is "no":

1.    "Did the district court err when it approved a class action settlement that consisted solely of *cy pres* distribution of millions of dollars when Frank presented undisputed evidence that similar settlements have successfully distributed similar sums to similarly-sized classes through a claims process? (Raised at JA163-166, 183-85, 270-72; Ruled on at JA12.)"

2.    "If it is true that any distribution to the class was not feasible, did the district court err as a matter of law in certifying the class? (Raised at JA171-72, 274; Ruled on at JA6)."

3.    "Did the district court err as a matter of law when it failed to apply § 3.07 and approved a *cy pres* distribution that paid money to a charity for which lead class counsel serves as chairman of the board and at least four organizations with previously budgeted donations from Google? (Raised at JA167-71, 274-75; Ruled on at JA13)."

## COUNTERSTATEMENT OF RELATED CASES

This case was previously before this Court following the District Court's dismissal of all claims at the pleading stage. This Court affirmed the dismissal of all federal claims and all state law claims except two causes of action under California state law. *See In re Google Inc. Cookie Placement Consumer Privacy Litig.* (*Cookie II*), 806 F.3d 125 (3d Cir. 2015). Google is also aware of the following related case that is now completed: *Carandang v. Google Inc.*, No. CGC-12-518415 (Cal. Super. Ct. S.F. Cty.).

## COUNTERSTATEMENT OF THE CASE

In this multidistrict, multidefendant consumer class action, Plaintiffs alleged with respect to Google that—in some circumstances and under certain conditions—Google bypassed the default cookie-blocking settings of a person's web browser to place a "tracking cookie" in their browser files called the "DoubleClick ID Cookie." JA48, JA72. That cookie may have allowed Google to *anonymously* correlate some class member visits to various websites that displayed Google ads, which in turn might have enabled Google to display ads that were more relevant to these class members than the random ads they would have

otherwise seen (e.g., displaying ads for pet supplies in a browser frequently used by a class member to visit pet-related websites). *See* JA48. The DoubleClick ID Cookie had no other effect on Plaintiffs.

Based on these allegations, Plaintiffs brought nine causes of action against Google for violation of various federal and state laws. On Google's motion, the District Court dismissed each cause of action with prejudice for failure to state a claim. *In re Google Inc. Cookie Placement Consumer Privacy Litig.* (*Cookie I*), 988 F. Supp. 2d 434, 451 (D. Del. 2013). Among other defects in their alleged claims, the District Court held that Plaintiffs failed to identify any cognizable damages.

In *Cookie II*, this Court affirmed the dismissal of most of Plaintiffs' claims—including all federal claims and all causes of action that threatened statutory damages. 806 F.3d 125. Importantly, the Court recognized that Plaintiffs did not allege any pecuniary harm. *Id.* at 134, 152. The only claims the Court decided to remand for further litigation were two essentially identical state law claims alleging common law and California constitutional law invasion of privacy. *Id.*

The Court's concern for the two claims that were remanded for further litigation related to an alleged misstatement by Google buried

in the Complaint that received virtually no attention in the parties' briefing because it was an outlandish accusation: that Google intentionally set out to deceive Plaintiffs by stating (in an obscure, seldom-visited backwater of Google's Help Center) that users of the Safari browser did not need to take affirmative action to block Google's cookies because Safari would do so by default; and that years after this Help Center language was made, Google deliberately violated that representation through a convoluted scheme that allegedly bypassed Safari's default settings with the aim of secretly causing Plaintiffs' browsers to accept the DoubleClick ID Cookie. *See* JA73-JA74; *Cookie II*, 806 F.3d at 149-53.

After remand from this Court, had this case proceeded without a settlement, the focus of the litigation would have been on (1) whether Plaintiffs viewed and relied on the alleged misrepresentation such that they had a reasonable expectation they would not receive a DoubleClick ID Cookie from Google; (2) whether Plaintiffs received a DoubleClick ID Cookie on their device by the means alleged in the Complaint or by some other means not at issue; (3) whether the placement of that cookie was highly offensive to a reasonable person; and (4) whether Google

"intentionally" embarked on a scheme to track Plaintiffs' Internet activity through "deceit"—that is, by deliberately misleading users to believe that Google would not place "tracking cookies" on browsers in their default state, and then purposefully "disregard[ing]" this representation by "overriding" Plaintiffs' browser settings. *Cookie II*, 806 F.3d at 149-52 (citing *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1072 (Cal. 2009)).

Rather than continuing to spend resources to litigate what was left of this case, the parties instead sought to resolve it through a classwide settlement. The settlement agreement limits the settlement class to only those persons that Plaintiffs alleged to have been injured: those who received a Google cookie "by the means alleged in the Complaint." JA128. The settlement was structured as an injunctive relief settlement for a couple of reasons: First, attempting to identify the class members who had received a DoubleClick ID Cookie by the means alleged in the Complaint (rather than by one of the other more likely and non-problematic methods of receiving this cookie) is impractical, if not impossible. And second, Plaintiffs had not alleged any damages or other pecuniary harm. The injunctive relief settlement

secured for the class complete remediation of the problem alleged in the Complaint and offered substantial monetary contributions to organizations who agreed to use these funds to help the class avoid similar privacy issues in the future. JA132-JA133.

The District Court, having considered the objections of lone Objector Frank, and having thoroughly analyzed the case in the context of its long history deciding multiple motions to dismiss and another settlement agreement involving one of the other co-defendants, examined the settlement between Google and Plaintiffs and approved it as being fair, reasonable, and adequate. JA4-JA12, JA290-JA293.

## COUNTERSTATEMENT OF THE STANDARD OF REVIEW

This Court reviews the District Court's approval of the settlement agreement, including the determination that the settlement is fair, reasonable and adequate "to ascertain whether or not the trial judge clearly abused his or her discretion." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 295 (3d Cir. 2011) (en banc). "A district court abuses its discretion if its 'decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Id.* "'Because of the district court's proximity to the parties and to the

nuances of the litigation, [this Court] accord[s] great weight to the [district] court's factual findings' in conducting the fairness inquiry." *Id.* at 320.

While the Court should affirm the District Court's decision on any ground supported by the record, it does not consider an appellant's arguments for reversal if they were not presented to the District Court, *United States v. Joseph*, 730 F.3d 336, 342 (3d Cir. 2013), nor will it consider any arguments not raised in the appellant's opening appeal brief, *see Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).

## SUMMARY OF THE ARGUMENT

None of the three issues raised on appeal by Objector Frank demonstrates that the District Court abused its discretion in approving the classwide settlement of this action:

*First*, the District Court's decision to approve a class settlement limited to *cy pres* and injunctive relief was not an abuse of discretion on at least four independent grounds:

1.    a *cy pres*-only settlement is appropriate where, as here, the district court finds that class members were not likely to obtain monetary damages at trial;

2.    because the focus of the case was on an alleged loss of privacy and not damages, the *cy pres* payments required by the settlement are not a substitute for class member monetary compensation but merely part of the injunctive relief designed to remediate and protect against class members' alleged loss of privacy;

3.    a *cy pres*-only settlement is appropriate where, as here, the facts show that it is impractical, if not impossible, to attempt to identify and make distributions to individual class members; and

4.    Objector Frank's proposed alternative solution of setting up a direct claims-made distribution is not workable, fair, nor beneficial to the class as a whole.

*Second*, even though individual class member distributions were infeasible, the District Court did not err in certifying the settlement class because, under the law of this Circuit, the settlement obviated the requirement imposed on litigation classes that there be a feasible method to determine who is in the class.

*Third*, the District Court did not clearly err in approving the *cy pres* recipients because the court properly reviewed the *cy pres* recipients for any potential conflict of interest, investigated the evidence, and determined that the relationships identified by Objector Frank did not pose a conflict of interest. All of the *cy pres* recipients in this case were proposed by Plaintiffs, not Google. And the record before the District Court was that the employees at Google that had an association with the *cy pres* recipients did not have any part in their selection to receive a distribution in this case. Further, Objector Frank's argument that Google could theoretically reduce donations it would otherwise have made to these *cy pres* recipients in the future is speculative at best and contradicted by the evidence.

Because none of the issues raised by Objector Frank demonstrate that the District Court abused its discretion, the District Court's approval of the class settlement should be affirmed.

## ARGUMENT

### I.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN APPROVING A SETTLEMENT LIMITED TO *CY PRES* AND INJUNCTIVE RELIEF.

#### A.   Direct Monetary Payments to Class Members Are Not Required Because the Class Would Not Likely Have Recovered Damages in the Lawsuit.

In approving the settlement, the District Court expressly found that "having overseen this litigation from the time it was instituted, I believe this has always been a case in which the facts preclude direct individual compensation." JA291. In light of this finding, the District Court did not abuse its discretion in approving a settlement that provided no direct monetary distributions to class members.

This Court and others have repeatedly approved class settlements that give no direct monetary benefit to the class and have recognized that a settlement need not provide direct monetary benefits to the class to be fair, reasonable, and adequate. *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (rejecting objections to settlement that provided no monetary relief to the class); *McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 F. App'x 146, 151 (3d Cir. 2015) (same; "a [class] settlement can be fair without involving pecuniary relief");

*Kirsch v. Delta Dental of N.J.*, 534 F. App'x 113, 116-17 (3d Cir. 2013) (approving class settlement that "resulted in no monetary award"); *Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986) (nonmonetary settlement relief adequate); *Maher v. Zapata Corp.*, 714 F.2d 436, 466 (5th Cir. 1983) (nonmonetary relief adequate settlement relief); *Lane v. Facebook, Inc.*, 696 F.3d 811, 819, 826 (9th Cir. 2012) (approving purely *cy pres* class settlement in a consumer privacy class action), *reh'g en banc denied*, 709 F.3d 791 (9th Cir. 2013).

This is especially true where "the likelihood of the plaintiffs actually recovering any portion of [their alleged damages] was dubious." *McDonough*, 641 F. App'x at 151 (nonmonetary settlement was fair where plaintiffs' $10 billion damages calculation was calculated using a model that the court had rejected in a similar case). In *Bolger*, this Court approved a class settlement despite objections that the settlement provided no monetary benefit to the class. 2 F.3d at 1311. In rejecting these objections, the Court recognized that a fair settlement does not require a monetary benefit in a case where the plaintiffs' claim to damages is weak. *Id.* at 1313. The Court emphasized that "[e]ven if plaintiffs hoped to secure a large damage award, this would have to be

-13-

drastically discounted by the improbability of their success on the merits." *Id.* Thus the Court reasoned that "even if we attach a small figure to the value of the [the nonmonetary relief provided by the settlement], this small value may be fair consideration for and accurately reflect the expected payout at trial net of the costs of trial." *Id.*

Similarly, here, the District Court understood the factual allegations and legal merits of Plaintiffs' claims and found the settlement to be fair even without individual monetary relief because "the facts preclude direct individual compensation." JA291. The District Court further explained that "the nature of the likely compensation to class members has always been complicated by the substantial problems of identifying the millions of potential class members and then of translating their alleged loss of privacy into individual cash amounts." JA12, JA291.

These findings by the District Court were not made off the cuff or in a vacuum. The court had extensively reviewed the factual allegations and legal merits of Plaintiffs' claims in many contexts throughout the course of the protracted litigation—in the context of deciding the

multiple motions to dismiss that had been filed in the action by various defendants, in deciding the multiple complex case management issues that arose during the litigation, in considering preliminary and final approval of the earlier class settlement involving defendant Pointroll, and in considering preliminary and final approval of the settlement with Google. *See* JA36-JA47 (case docket entries).

In addition, this Court had already affirmed the dismissal of nearly all of Plaintiffs' claims, including all claims that posed a risk of statutory damages. *Cookie II*, 806 F.3d 125. And this Court had further recognized that Plaintiffs did not allege any pecuniary harm. *Id.* at 134, 152. Consequently, the District Court did not clearly err in finding that even if Plaintiffs could have prevailed on their remaining privacy tort claims at trial, class members were not likely to receive any individual damages awards.[1]

---

[1] This Court sitting en banc has held that when "comparing the value of settlement versus trial, [the Court] must be careful to judge the fairness factors 'against the realistic, rather than theoretical, potential for recovery after trial.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011) (en banc) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004)).

Accordingly, as in *Bolger* and *McDonough*, the District Court properly approved a class settlement that provided only nonmonetary relief to the class.

**B.    The *Cy Pres* Payments in this Case Are Part of the Injunctive Relief to Protect the Class—Not a Substitute for Monetary Compensation to Class Members.**

Because class members were not likely to obtain a damages award even if they had prevailed in this action, the focus of the settlement is on ensuring the remediation of the issue complained about by Plaintiffs and protecting class members from similar issues in the future. Indeed, that is the whole point behind certification of a class under Rule 23(b)(2), which provides for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).[2]

---

[2] Because Objector Frank does not challenge the District Court's determination that Rule 23(b)(2) was satisfied here, this issue is not before the Court.

Thus, the function of the *cy pres* payments in the settlement is not to substitute for monetary compensation to the class (since Plaintiffs did not allege any damages), but rather to enhance the injunctive relief by giving money to organizations who would use it to help prevent similar situations in the future.[3] To that end, the *cy pres* recipients are only permitted to use the settlement funds "to promote public awareness and education, and/or to support research, development, and initiatives, related to the security and/or privacy of Internet browsers." JA133. Objector Frank therefore incorrectly asks the Court to analyze the *cy pres* distribution in this case as a substitute for monetary payments to class members instead of what it actually is: additional injunctive relief designed to help protect the class.

### C.    Identifying and Distributing Funds to Class Members is Impractical if Not Impossible.

The District Court's approval of a class settlement with no direct monetary distributions to class members was also warranted because,

---

[3] Notably, it was an Internet privacy researcher associated with one of the settlement's *cy pres* recipients that first detected and publicized the issue at the heart of this case. *See Cookie II*, 806 F.3d at 132; JA70-JA71.

even if class members could have proved monetary damages at trial, monetary distributions would have been impractical if not impossible to facilitate. As the District Court stated at the hearing: in addition to being "de minimis," direct monetary payments to absent class members would also "likely be logistically burdensome, impractical, [and] infeasible." JA291; *see also* JA12.

As Objector Frank concedes (Op. Br. at 31), *cy pres* distributions are appropriate when it is "economically or administratively infeasible to distribute funds to class members." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 169 (3d Cir. 2013). Of course, this Court in *Baby Products* also recognized that *cy pres* distributions may be appropriate even where some class members could feasibly receive a distribution. *Id.* at 173-74 (even though *cy pres* distributions are appropriate where "individual distributions are economically infeasible, we decline to hold that *cy pres* distributions are only appropriate in this context"). Accordingly, the District Court correctly concluded that a *cy pres* distribution here was consistent with *Baby Products*, especially because any distribution to class members would be impractical if not impossible.

To begin with, the District Court found that there were "substantial problems of identifying the millions of potential class members." JA12. That is an understatement. In fact, the parties have no way to identify who the class members are. And, as explained below, the class members themselves would typically be unable to self-identify as well.

The settlement limits the settlement class to only those persons that Plaintiffs alleged to have *improperly* received a cookie from Google: those who received a Google DoubleClick ID Cookie "by the means alleged in the Complaint" (i.e., where a cookie was placed in a third-party context using the particular means alleged in the Complaint). JA6. Thus anyone who received a DoubleClick ID Cookie by ordinary means—such as by clicking on a DoubleClick ad displayed in their browser or visiting other Google-owned websites in a first-party context—would not be a member of the class.[4]

---

[4] Indeed, given Objector Frank's claim to have visited "countless" websites with his device since 2009 (JA179), it is highly likely that he had already acquired a DoubleClick ID Cookie on his device prior to the limited time period (late 2011) when the events alleged in the Complaint occurred. In other words, Objector Frank is most likely not a class member.

Because the information associated with the DoubleClick ID Cookie during the relevant time period was always anonymous, Google cannot identify any members of the class. Nor can a potential class member confirm whether they are a member of the class just by looking for the DoubleClick ID Cookie on their device. That cookie could have (and in most cases would have) been placed by means other than those alleged in the Complaint. And there is no discernable difference between DoubleClick cookies placed by the means described in the Complaint or by some other means. *See* JA72 (showing example of what a DoubleClick ID Cookie looks like—it is just a text file containing an anonymous string of random characters that contains no names, addresses, personal information, or any indication how the cookie was placed).

This difficulty in identifying class members is readily apparent from reviewing the Complaint and the articles cited therein. *See, e.g.*, JA69-JA81. In fact, a Stanford University researcher had to conduct highly-technical experiments to detect the existence of a cookie placed by the means alleged in the Complaint. *Id.* Because the District Court had repeatedly considered the pleadings and been educated by the

parties at oral argument as to the technical processes involved, *see Cookie I*, 988 F. Supp. 2d 434, there was no need for the District Court to conduct detailed fact-finding or discovery at the settlement approval stage to conclude that it would be impractical to attempt to identify class members. All parties and the District Court recognized the problem. JA12.

Therefore, the District Court did not clearly err in finding that individual class member payments were not a practical option in this case.[5]

### D.    Objector Frank's Proposal for a Claims-Made Settlement Distribution is Not Practical or Beneficial to the Class.

Because identification of class members is impractical if not impossible, Objector Frank's proposal to set up a claims-made

---

[5] The Court was not required to wait for an expert to come up with a method to identify class members before approving the settlement. *See Halley v. Honeywell Int'l, Inc.*, – F.3d –, 2017 WL 2802638, at *8 (3d Cir. June 29, 2017) ("[W]here valuation of plaintiffs' claims is difficult or impossible without expert testimony, and expert reports have not been exchanged or depositions taken, the District Court need not delay approval of an otherwise fair and adequate settlement if it has sufficient other information to judge the fairness of the settlement."). "To conclude otherwise might risk requiring parties to continue to litigate cases unnecessarily after a fair settlement has been reached." *Id.*

settlement distribution that would give the settlement fund to those class members who can verify their membership in the class and submit a claim is not a viable solution. And it was properly considered and rejected by the District Court. *See* JA291 ("I understand [Objector Frank's argument] that this claims made option and a lottery option have been used. To me though, that does not serve the purpose of this class action.").

Even speculating that a limited few class members may have the technical resources and ability to be able to determine that they are a member of the class, it would not be just to overcompensate these few individuals with the entire settlement fund. *See Baby Products*, 708 F.3d at 176 (*cy pres* distributions are preferred over limited direct distributions that would "overcompensate claimant class members at the expense of absent class members"). Because of the technical obstacles in identifying cookies placed by the means described in the Complaint, this case most certainly would not be like the *Fraley v. Facebook, Inc.* case that Objector Frank seeks to emulate in which the

majority of class members were identifiable and more than 600,000 identifiable class members submitted valid claims. Op. Br. at 25.[6]

Furthermore, Objector Frank's logic is misplaced, as the absent class members here would surely benefit more by having the settlement funds go to Internet privacy organizations that have promised to use the funds in a way that helps protect the class, rather than to a few lucky class members who would instead use those surplus funds for personal expenditures that would provide absolutely no benefit to the rest of the class.

Nor would it benefit the class to try to increase the number of claimants by eliminating the burden of confirming that claimants are valid class members. Doing so in this case, where nearly everyone who uses the Internet might believe they are a class member but only a small fraction of that group actually is, would inevitably result in complete dilution of the recovery for valid class members. As this Court

---

[6] Notably, even after the parties in *Fraley* changed the settlement to allow direct distributions to class members, the court found that "adding a direct payment component to the settlement, did very little to buttress its overall fairness." 966 F. Supp. 2d 939, 943 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016).

has recognized, "[i]t is unfair to absent class members if there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims." *Carrera v. Bayer Corp.*, 727 F.3d 300, 310 (3d Cir. 2013), *reh'g en banc denied*, 2014 WL 3887938 (3d Cir. May 2, 2014).

Accordingly, the District Court did not abuse its discretion in rejecting Objector Frank's unworkable and undesirable proposal for a direct distribution.

## II.    THE SETTLEMENT CLASS WAS PROPERLY CERTIFIED EVEN IF A LITIGATION CLASS COULD NOT HAVE BEEN CERTIFIED.

Objector Frank incorrectly contends that if a direct distribution to class members is infeasible, then the settlement class should not have been certified. Op. Br. at 32-34.

It is true that the putative litigation class under Rule 23(b)(3) alleged in the Complaint in this action could not have been certified because class members could not be identified and because individual issues such as proving lack of consent and actual damage would have predominated.[7] "Class ascertainability is 'an essential prerequisite of a

---

[7] *See, e.g.*, *In re Google Inc. Gmail Litig.*, No. 13-02430, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) (denying certification in privacy class

class action, at least with respect to actions under Rule 23(b)(3).'" *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012)). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* at 305 (quoting *Marcus*, 687 F.3d at 593). And this Court has rejected methods of identifying class members "that would amount to no more than ascertaining by potential class members' say so." *Id.* at 306 (quoting *Marcus*, 687 F.3d at 594).

"In the settlement context, however, this concern evaporates." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 315 (3d Cir. 2011) (en banc). As the Court phrased it in another decision, "the concern that 'the method of determining whether someone is in the class … be administratively

---

action because individual issues would predominate); *Peterson v. Aaron's, Inc.*, No. 14-1919, 2017 WL 364094, at *5, *10 (N.D. Ga. Jan. 25, 2017) (putative class of persons whose private information was unlawfully collected by defendant was not ascertainable and individual issues would be predominate); *Murray v. Fin. Visions, Inc.*, No. 07-2578, 2008 WL 4850328, at *5 (D. Ariz. Nov. 7, 2008) ("invasion of privacy claims require highly individualized determinations of fact and law that make class certification under Rule 23(b)(3) inappropriate"); *Castro v. NYT Television*, 895 A.2d 1173, 1180 (N.J. Super. Ct. App. Div. 2006) (class of patients whose privacy was invaded when they were videotaped in the emergency room for a TV show could not be certified).

feasible,' [quoting *Carrera*, 727 F.3d at 307] is not implicated by this case, because the settlement agreement removes the need for a trial." *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 656 F. App'x 8, 8-9 (3d Cir. 2016) (citing *Sullivan*, 667 F.3d at 335 (Scirica, J. concurring)). Simply put, "[s]ettlement classes raise different certification issues than litigation classes." *Carrera*, 727 F.3d at 308 n.4 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

Allowing parties to settle class action claims prior to certification of a litigation class and where certification of a litigation class may not be possible makes good public policy as well: settlement resolves and avoids costly litigation over uncertain questions of class certification for trial. In the Court's en banc decision in *Sullivan*, the Court explained:

> [A]chieving global peace is a valid, and valuable, incentive to class action settlements. Settlements avoid future litigation with all potential plaintiffs — meritorious or not. If the dissent's position were adopted, there would be no settlements, collusive or otherwise. First of all, litigating whether a claim is "colorable" and defending who is in and who is not in the class would be an endless process, preventing the parties from seriously getting to, and engaging in, settlement negotiations.

667 F.3d at 311.

Had this case proceeded without a settlement, no class could have been certified for some of the very reasons Objector Frank identifies.

But such obstacles to certification of a litigation class do not bar the judicially-efficient and public-policy-favored classwide settlement vehicle. The practical and legal effect of the settlement is to bind those class members who do have the means to identify themselves as members of the class—if any such class members exist—and who would otherwise be in a position to personally assert a claim covered by the settlement. Class members who cannot be identified by any practical means have given up nothing in the settlement because their inability to determine whether they received a cookie by the means described in the Complaint would preclude them from filing their own individual claim.

In addition, as Objector Frank concedes, because the District Court certified the settlement class under Rule 23(b)(2), it did not need to consider whether the settlement class satisfied the more complicated requirements of Rule 23(b)(3)—whether common issues "predominate" over individual issues and whether the class action vehicle was "superior" to other alternatives. *See* Fed. R. Civ. P. 23(b)(3); Op. Br. at 34 n.5 ("The settling parties here avoid the 'superiority' requirement of (b)(3)"). The District Court only had to find that Google had allegedly

acted "on grounds that apply generally to the class, so that final injunctive relief … is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). And the court made this finding. JA261.

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN APPROVING THE *CY PRES* RECIPIENTS.

Objector Frank contends that the *cy pres* recipients approved by the Court were improper because the prior associations between the parties and these recipients render the *cy pres* benefit both collusive and illusory. *See* Op. Br. at 34-40. Neither is true.

### A. The *Cy Pres* Benefit is Not Collusive.

Contrary to the arguments of Objector Frank, otherwise worthy *cy pres* recipients do not render a settlement collusive merely because they have received donations from Google in the past or because some happen to be associated with universities that are the alma mater of Google executives. Those loose and tenuous relationships are not the types of relationships that motivate collusion at the expense of class members. That is why other courts have rejected similar objections made by Objector Frank in other litigation. *See, e.g.*, *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1137-38 (N.D. Cal.

2015) ("there is no indication that counsel's allegiance to a particular alma mater factored into the selection process"), *appeal pending*, No. 15-15858 (9th Cir. Apr. 28, 2015).

A *cy pres* recipient would only raise questions of collusion if one of the participants involved in selecting the recipient will personally and directly benefit from the distribution to that recipient. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (*cy pres* recipient was appropriate even though defendant's employee sat on recipient's board); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1042 (9th Cir. 2011) (no reason for recusal where judge's husband sat on a board of *cy pres* beneficiary because the husband would not "himself realize a significant benefit"); *Vasco v. Power Home Remodeling Grp. LLC*, No. 15-4623, 2016 WL 5930876, at *10 (E.D. Pa. Oct. 12, 2016) (potential for *cy pres* recipient to refer cases to class counsel because of *cy pres* distribution was speculative and "does not render the settlement unfair").

The District Court here properly reviewed the *cy pre*s recipients for any potential conflict of interest, investigated the evidence, and determined that the relationships identified by Objector Frank did not pose a conflict of interest. JA13, JA281. The District Court found that

the "*cy pres* contributions to the proposed recipients [are] an effective and beneficial remedy that bears a substantial nexus to the interests of the Settlement Class." JA13. Citing *Lane* and other cases, the District Court further examined and correctly rejected Objector Frank's argument that "any relationship between a party (and its counsel) and a proposed *cy pres* recipient automatically disqualifies the proposed *cy pres* recipient." *Id.*

In making this determination, the District Court did not clearly err. As in *Referrer Header*, there is no indication here that anyone participating in the selection of the *cy pres* recipients was improperly motivated by an allegiance to one of these recipients. Notably, all of the *cy pres* recipients in this case were proposed by Plaintiffs, not Google. *See* JA133. And the record before the District Court was that the employees at Google that had an association with the *cy pres* recipients did not have any part in their selection to receive a distribution in this case. JA281.

## B.    The *Cy Pres* Benefit is Not Illusory.

Objector Frank's additional argument that the *cy pres* benefit is illusory because Google has a history of donating to some of the selected

recipients is speculative and unsupported. Even if Google might donate to some of the universities associated with some of the *cy pres* recipients in the future, the *cy pres* distribution required by the settlement is not illusory. The settlement requires that these funds be used in a very specific way that normal charitable contributions would not—a way that provides a narrowly-tailored benefit to protect class members from the issues alleged in this lawsuit. Specifically, the *cy pres* recipients are only permitted to use the settlement funds "to promote public awareness and education, and/or to support research, development, and initiatives, related to the security and/or privacy of Internet browsers." JA133.

In addition, by restricting use of the *cy pres* funds to this specific purpose, the funds are going to privacy watchdogs and researchers like those who are responsible for discovering and publishing the unknown workings of the Safari browser that caused the privacy issue alleged in the Complaint. *See Cookie II*, 806 F.3d at 132; JA70-JA71. These funds are thus providing a real benefit to the class that they would not otherwise get but for the settlement. *See In re Baby Products Antitrust*

*Litig.*, 708 F.3d 163, 172 (3d Cir. 2013) (*cy pres* distribution is appropriate if "used for a purpose related to the class injury").

Objector Frank's argument that Google could theoretically reduce donations it would otherwise have made to these *cy pres* recipients in the future is speculative at best and unsupported by any evidence. To the contrary, the evidence before the District Court was that Google is "an enormous company" and "the people at that company that decide its charitable contribution don't have anything to do with the settling of cases and how those funds are distributed." JA281.

There is, therefore, no abuse of discretion in the District Court's approval of the *cy pres* recipients.

## IV. THE AMOUNT OF THE CLASS COUNSEL FEE AWARD IS SEVERABLE FROM THE FAIRNESS OF THE SETTLEMENT.

Although the amount of the class counsel fee award has not been challenged on appeal by Objector Frank, he argues that the underlying problem with the *cy pres* component is that it makes the settlement look more valuable and thereby allows class counsel to claim an otherwise higher fee award. *See* Op. Br. at 18 (*cy pres* fund "assures distribution of a class settlement or award fund sufficiently large to guarantee

substantial attorneys' fees"); *id.* at 30 (the settlement "should not be considered more than a $2 million settlement with 100% of the benefit to the attorneys").

But the amount of the fee award is completely separate from and not fixed by the settlement and was designed not to have an effect on approval of the other settlement terms as fair, reasonable, and adequate. As the settlement agreement provides:

> It is not a condition of this Agreement that any particular amount of attorneys' fees, costs or expenses or incentive awards be approved by the Court, or that such fees, costs, expenses or awards be approved at all. Any order or proceeding relating to the amount of any award of attorneys' fees, costs, or expenses or inventive awards, or any appeal from any order relating thereto, or reversal or modification thereof, shall not operate to modify, terminate or cancel this Agreement, or affect or delay the finality of the Final Order and Judgment, except that any modification, order or judgment cannot result in Google's overall obligation exceeding the agreed-upon amount of the Settlement Fund.

JA136.

Accordingly, if for any reason the Court concludes that the District Court's decision is problematic because the *cy pres* fund caused it to over-value the settlement and thereby allow a higher fee award, the appropriate remedy is not to discard the heavily-negotiated settlement and send the parties back to the negotiating table. Rather, this Court should affirm approval of the settlement and remand only on the issue

of the fee award. *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 346 (3d Cir. 1998) ("we will affirm the certification of the proposed class and the approval of the settlement, and vacate and remand on the issue of attorneys' fees"); *Baby Products*, 708 F.3d at 178 ("Where a district court has reason to believe that counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class, we therefore think it appropriate for the court to decrease the fee award.").

## CONCLUSION

For the foregoing reasons, and those explained in the answering brief filed by Plaintiffs, this Court should affirm the District Court's order approving the settlement because it was not an abuse of the court's discretion.

Dated: July 28, 2017          WILSON SONSINI GOODRICH & ROSATI
                              Professional Corporation

                              By: /s/ Michael H. Rubin
                                  Michael H. Rubin (CA Bar No. 214636)
                                  One Market St., Spear Tower, Ste. 3300
                                  San Francisco, California 94105
                                  Telephone: (415) 947-2000

                              *Attorneys for Defendant-Appellee*
                              Google Inc.

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Third Circuit Rule 31.1(c), the undersigned hereby certifies:

1.    Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), the brief contains 6,691 words according to the word count feature of the word processing software used to prepare the brief.

2.    The brief complies with the type size and typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6).

3.    The text of the electronic brief is identical to the text in the paper copies.

4.    The Sophos Endpoint Security and Control, version 10.6, virus detection program has been run on the electronic copy of this brief and no virus was detected.


Dated: July 28, 2017                    /s/ Michael H. Rubin

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Third Circuit Rule 28.3(d), the undersigned hereby certifies that the attorneys whose names appear on this brief are members of the bar of this court.


Dated: July 28, 2017                    /s/ Michael H. Rubin

## CERTIFICATE OF SERVICE

Pursuant to Third Circuit Rule 31.1, the undersigned certifies that on July 28, 2017, I caused the foregoing brief to be filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system and caused seven (7) copies of the brief to be mailed to the Clerk.

All participants in this action are represented by registered CM/ECF users and will be served by the appellate CM/ECF system.


Dated: July 28, 2017                /s/ Michael H. Rubin